IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as Court-Appointed Receiver,<br><br>Plaintiff,<br><br>v.<br><br>GRETCHEN A. HOWELL, an individual; and LESLIE M. HOWELL, an individual,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION ON CROSS-MOTIONS FOR RELIEF UNDER RULE 59<br><br><br>Case No. 2:19-cv-00813-TC<br><br>Judge Tena Campbell |

Before the court are two motions to amend the court's judgment. The first was filed by the Plaintiff-Receiver, Jonathan O. Hafen (the "Receiver"); the court grants this motion. The second was filed by Gretchen Howell ("Gretchen"), who is one of the two defendants in this case (the other Defendant is Leslie Howell ("Les")); the court denies this motion.

I.   **Factual and Procedural Background**

The court's summary judgment order discussed, in detail, the extensive history of this case, including the Rust Rare Coin ("RRC") receivership,[1] the role of the court-appointed Receiver, and the Howells' involvement with the Rust Rare Coin Ponzi scheme. (Order Granting Summ. J., ECF No. 88). As a result, the court will not repeat the entirety of that history here. But in brief, Les and Gretchen Howell are two individual defendants in this RRC ancillary case. They are married, live in Arizona in a house outside Kingman, and are individual recipients of funds from the RRC scheme. (Howells' Mots. Summ. J. Ex. 1, Declaration of

---

[1] See also Commodity Futures Trading Comm'n et al. v. Rust Rare Coin et al., No. 2:18-cv-00892-TC-DBP.

Gretchen Howell (Gretchen Decl.), ECF No. 43-1 ¶¶ 3, 7; Howells' Mots. Summ. J., Ex. 2, Declaration of Leslie Howell (Les Decl.) ECF No. 43-2 ¶¶ 5, 7; App. Mot. Summ. J. Ex. F, Deposition of Gretchen Howell (Gretchen Dep.), ECF No. 39-4 at 4:17–25; App. Mot. Summ. J. App. Ex. E, Deposition of Les Howell (Les Dep.), ECF No. 39-3 at 12:23–13:1).

The Receiver brought two claims against them: fraudulent transfer and unjust enrichment. (Compl., ECF No. 2 ¶¶ 39–47). He alleged that from October 2008–2015, the Howells made investments into the RRC Silver Pool totaling almost $1 million. Id. ¶ 36. As the evidence at summary judgment established, Gretchen invested $96,450.00 with RRC, and Les says he invested $1,222,003.77. (Gretchen Decl., ECF No. 43-1 ¶ 7; Les Decl., ECF No. 43-2 ¶ 7).

Starting in 2013, the Howells received distributions from the Silver Pool in amounts that the Receiver alleged totaled about $4.2 million. (Compl., ECF No. 2 ¶ 37). But as the evidence at summary judgment showed, Les and Gretchen contributed separately to the Pool and were separately paid out by RRC. Gretchen agrees she received disbursements from RRC totaling $22,000, meaning she paid $74,450.00 more to RRC than she received from it. (Gretchen Dep. ECF No. 39-4 at 24:17–22). Les agrees he received disbursements from RRC totaling at least $4,511,000.00. (See App. Mot. Summ. J. Ex. D, Defs.' Responses to Pl's First Set of Disc. Requests (Def. Interrog. Resps.), ECF No. 39-2 at 9, HOWELL 00186–88 (representing Les received disbursements totaling $4,511,000.00)). Les used money he received from RRC to buy 92 acres of land in Kingman. (Les Dep., ECF No. 39-3 at 12:23–13:1; see Gretchen Dep., ECF No. 39-4 at 4:17–25). Les exclusively used money he received from RRC to build the house on the Kingman property that he and Gretchen share. (Les Dep., ECF No. 39-3 at 12:2–10). Les confirmed it would "probably be a good estimate" to say he paid his homebuilder between three and four million dollars to build the home on the Kingman property. Id. at 11:9–11. The

Howells moved into the house on January 1, 2018. Id. at 5:17–6:6. The Howells hold title to their Kingman property as joint tenants. (Opp. Mot. Summ. J., ECF No. 47 at 14 (admitting this fact)). To sum up, Les was a net winner of the RRC Ponzi scheme, and with his RRC payouts he bought the land for the Kingman, Arizona house and paid for its construction. Gretchen was a net loser, but she owns half of the Kingman house, which was paid for by Les's RRC payouts.

Based on these and other materially-undisputed facts, the court granted the Receiver summary judgment, (Order Granting Summ. J., ECF No. 88),[2] and entered a judgment reading:

> IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Plaintiff Jonathan O. Hafen against Defendants Leslie M. Howell and Gretchen A. Howell. Judgment is in the amount of $3,218,103.96. This judgment includes the funds that Leslie M. Howell received from the Receivership Defendants in excess of his principal investment and transferred to Gretchen A. Howell by titling their Kingman, Arizona property in her name as well as his own, which Gretchen A. Howell must disgorge.

(J., ECF No. 89).

## II. The Motions to Amend Judgment

Both the Receiver and Gretchen Howell moved to amend this judgment, and the court considers both motions in this Order.

a) <u>The Receiver's Motion to Amend Judgment (ECF No. 90).</u>

The Receiver moves the court, under Federal Rules of Civil Procedure 7 and 59(e), to amend the judgment to include an award of prejudgment interest. (Receiver Rule 59 Mot., ECF No. 90 at 1). The Receiver asks for an award of prejudgment interest totaling $683,847.09. Id. at 4. The Receiver arrives at that number by using the date that either one of the Howells

---

[2] In its Order, the court made two determinations before considering summary judgment. First, it denied the Howells' Motion to Exclude Proposed Expert Jonathan O. Hafen. Id. 3–7. Second, it denied the Howells' Motion to Exclude Proposed Expert D. Ray Strong (but determined that it would exclude Mr. Strong's opinion on the ultimate issue of whether RRC was actually a Ponzi scheme). Id. at 7–9. These determinations are not at issue here.

received a last payment from RRC (November 2018), and using an interest rate of five percent and a simple interest approach.  Id. ("$683,847.09 (0.05 / 12 x 51 months x $3,218,103.96.")).

Gretchen and Les oppose the Receiver's request.  (Opp. Receiver Rule 59 Mot., ECF No. 94).  Their opposition was untimely; as the Receiver notes, (Reply Supp. Receiver Rule 59 Mot., ECF No. 96), the motion had been submitted for decision, and a hearing on it was scheduled, before the Howells filed their opposition.  The Howells assert six grounds on which they object to the Receiver's request, but apart from citations to the record in this case and the Federal Rules of Civil Procedure, they do not cite any legal authority to support any of these points.  See id.

b)  Gretchen Howell's Motion to Amend Judgment (ECF No. 95).

On March 22, 2023, Gretchen Howell moved the court to amend the judgment, under Federal Rules of Civil Procedure 59(a) and 59(e).  (Gretchen Rule 59 Mot., ECF No. 95).  She has two requests.  First, she "asks the Court to clarify that her liability for the Judgment is limited to her interest in the Kingman, Arizona property that presently she jointly owns with her husband, Les."  Id. at 2.  "In the alternative, to the extent the Judgment is a pure money judgment against Gretchen, [she asserts that] the Court should set aside the Judgment as against Gretchen because the evidence in the summary judgment record is not sufficient to support a judgment against Gretchen in the amount of $3,218,103.96."  Id.  The Receiver responded in opposition to Gretchen's requests, (Opp. Gretchen Rule 59 Mot., ECF No. 98), and she filed a reply in support of her motion, (Reply Supp. Gretchen Rule 59 Mot., ECF No. 99).

**III.    Legal Standard for Rule 59(e) Motions**

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  Both motions were timely filed.  The text of Rule 59(e) "says nothing about when relief under the Rule is appropriate." Nelson v. City of Albuquerque,

925 F.3d 1187, 1189 (10th Cir. 2019) ("Nelson II") (Hartz, J., dissenting). But the Tenth Circuit has been clear that "Rule 59(e) relief is available in limited circumstances." Hayes Fam. Tr. v. State Farm Fire & Cas. Co., 845 F.3d 997, 1004 (10th Cir. 2017). It "ha[s] restricted district courts' discretion when ruling on motions based on Rule 59(e)." Nelson v. City of Albuquerque, 921 F.3d 925, 929 (10th Cir. 2019) ("Nelson I").

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). "While a Rule 59(e) motion 'is appropriate where the court has misapprehended the facts, a party's position, or the controlling law . . . [i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.'" O'Neal v. Clark, No. 2:14-CV-363, 2019 WL 6828655, at *1 (D. Utah Apr. 29, 2019) (quoting Servants of Paraclete, 204 F.3d at 1012); Nelson I, 921 F.3d at 929 (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008)).

IV.  **Analysis of Gretchen Howell's Rule 59(e)³ Motion**

As a preliminary matter, while the Receiver argues that Gretchen should not be able to simply reargue issued that she has already had a full and fair opportunity to air, (Opp. Gretchen Rule 59 Mot., ECF No. 98 at 2), because Gretchen also argues that the court erred in its analysis, (see Gretchen Rule 59 Mot., ECF No. 95 at 2), the court will decide her motion on the merits, see

---

³ Gretchen also moves to amend under Rule 59(a), noting that some courts have applied that rule to the summary judgment context. To support this proposition she cites cases decided by Utah state courts; federal courts in Utah have held otherwise. See Morgan v. N.A.R., Inc., No. 2:06-CV-470, 2008 WL 2149370, at *1 (D. Utah May 19, 2008) (declining to consider request for amendment of judgment under Rule 59(a)(2) because the "case was concluded on summary judgment, rather than by a nonjury trial"). This court similarly declines to consider the summary judgment decision at issue here under Rule 59(a).

Hayes, 845 F.3d at 1005. ("Certainly a motion under Rule 59(e) allows a party to reargue previously articulated positions to correct clear legal error.").

Gretchen first requests a clarification about the judgment against her. (Gretchen Rule 59 Mot., ECF No. 95 at 3). She argues that "the court should clarify that the judgment against Gretchen is limited to her interest in the Kingman, Arizona property and that Gretchen will have no liability if she deeds her half ownership interest to Les." Id. at 7.[4] Obliging Gretchen's request, the court clarifies that the judgment against Gretchen is a money judgment. The Judgment specifies that judgment is against both Leslie and Gretchen, and it is "in the amount of $3,218,103.96." (J., ECF No. 89). It further specifies that it includes the funds that Leslie received from RRC and transferred to Gretchen by titling the house in both of their names. Id. Gretchen's assertion that she "will have no liability if she deeds her half ownership interest to Les," (see Gretchen Rule 59 Mot., ECF No. 95 at 7), misunderstands the court's judgment because the judgment is a money judgment.

Gretchen's second request is that the court "set aside the Judgment as against Gretchen because the evidence in the summary judgment record is not sufficient to support a judgment against Gretchen in the amount of $3,218,103.96." Id. at 2. Were the court's judgment against Gretchen alone for that amount, Gretchen would be correct. But the court's judgment was

---

[4] Gretchen also argues that because Les purchased the land upon which the house was built with some of his earliest disbursements from RRC, these were—in her view—in satisfaction of an antecedent debt and, consequently, "The facts do not show that Gretchen holds title to property purchased with disbursements from RRC that were in excess of Les's contributions to RRC." Id. at 6–7. The court considered this issue in deciding to grant summary judgment for the Receiver. (See Order Granting Summ. J., ECF No. 88 at 26 n.21). Nothing in Gretchen's Rule 59 motion alters the court's initial analysis of this issue, or adds support to Gretchen's argument that the court must trace specific dollars to her (and the court could not find authority that states as much). It will not, consequently, alter its previous determination on this issue.

"against Defendants Leslie M. Howell and Gretchen A. Howell. Judgment [wa]s in the amount of $3,218,103.96." (J., ECF No. 98).

Gretchen further asserts that "There is no evidence of any cash transfers from Les to Gretchen. The only evidence in the summary judgment record is that Les jointly titled the Kingman, Arizona property in Les and Gretchen's names. But there is no evidence in the summary judgment record sufficient to fix a dollar value, and certainly not $3,218,103.96." (See Gretchen Rule 59 Mot., ECF No. 95 at 8). Gretchen continues, "Assuming arguendo that Les used every excess distribution that he received from RRC to purchase and improve the Kingman, Arizona property (and there is no evidence to support such a premise in the summary judgment record), then Gretchen's maximum liability would be half of that amount. Because Les retained half ownership in the property." Id. Gretchen further asserts that "[the Receiver]'s only evidence regarding Gretchen was that Les used some unknown and unidentified portion of the disbursements he received from RRC to purchase land and build a home in Kingman, Arizona, which was titled jointly in the names of Les and Gretchen." Id.

This argument misstates or misapprehends the evidence in the summary judgment record. Although Gretchen argues to the contrary, the evidence from Les's deposition supports a judgment in this amount. That evidence from Les's deposition is the following: the Receiver's attorney asked Les how much he paid his (Les's) general contractor, Mr. Orr, who built the home on Les's property; Les responded that he could not give a "grand total." (Les Dep., ECF No. 39-3 at 8:15–17, 9:24–10:1). Les's attorney objected to this question, and to a follow up question from the Receiver's attorney about providing a "ballpark answer"; both on the grounds that this question called for speculation and on the grounds of lack of foundation. See id. at 10:3–24. Les also objected to answering these questions. In response to the Receiver's attorney pressing him

7

to provide an amount he paid Mr. Orr, Les said "Not – I don't feel that I could give you an accurate answer," id. at 10:8–9, "I would prefer not to give you a speculative answer," id. at 10:13–14, and "I can't answer. And I would prefer not to because I don't have those numbers in front of me," id. at 10:22–24.

But the Receiver's attorney followed up the above line of questioning by asking whether the amount Les paid his general contractor was more than a million dollars, to which Les responded "Yes." Id. at 10:25–11:2. The Receiver's attorney asked if it was more than two million, to which Les responded "Yes." Id. at 11:3–4. The Receiver's attorney asked if it was more than three million, to which Les responded "I believe so." Id. at 11:5–6. The Receiver's attorney asked if it was more than four million, to which Les responded "No." Id. at 11:7–8. Finally, the Receiver's attorney asked, "So between three and four?" and Les responded, "That would probably be a good estimate, yes." Id. at 11:9–11. Les's attorney did not object during this line of questioning. Soon after, the Receiver's attorney asked Les, "Can you tell me the source of the funds that you paid to Mr. Orr to build your home? Where did the money come from?," and Les answered that "The source of the funds were checks and wire transfers from Rust Rare Coin to my checking account." Id. at 12:2–7. The Receiver's attorney then asked "Did any of the money that you paid to Mr. Orr come from anywhere other than Rust Rare Coin?," and Les answered "No." Id. at 12:8–10.

Although Gretchen argues to the contrary, (see Gretchen Rule 59 Mot., ECF No. 95 at 4 n.3), that Les could not remember the precise dollar amount he spent on the house does not make the above testimony inadmissible for lack of foundation or speculation, or even materially disputed. This is because that objected-to part is not the portion of the deposition upon which the Receiver (or the court) relies for the facts about the money, from RRC transfers, that Les spent

8

on building the Kingman house. That Les spent between three and four million dollars, and that he only spent funds received from Rust Rare Coin transfers, on building the house is not disputed by evidence in the record. And Les—being the person who received those funds from RRC and expended them on building his house—had a foundation to provide that information. These facts establish that Les spent at least three million dollars in money he was transferred from Rust Rare Coin in building the house. As noted above, it is undisputed that Gretchen and Les hold title to the Kingman property as joint tenants. (Opp. Mot. Summ. J., ECF No. 47 at 14).

To put the above differently and clarify, Gretchen Howell is liable for $1.5 million dollars, and Leslie Howell is liable for the balance of his $3,218,103.96 in "net-winnings" from RRC. The court will amend the judgment to reflect this clarification.

## V. Analysis of the Receiver's Rule 59(e) Motion

Having denied Gretchen's motion for Rule 59 relief, the court moves to an assessment of the Receiver's request for prejudgment interest. Having carefully considered the parties' arguments, the court is persuaded that the Receiver is entitled to prejudgment interest.

### i. The Receiver Does Have a Basis for the Relief Requested, Even Though He Did Not Ask for Prejudgment Interest at Summary Judgment.

The Receiver's Motion for Summary Judgment did not seek an award of prejudgment interest. But the Tenth Circuit has affirmed a district court's granting of a Receiver's motion to amend judgment to include prejudgment interest in circumstances that are similar to Les's situation. See Wing v. Gillis, 525 F. App'x 795, 801 (10th Cir. 2013) (unpublished) (concluding district court did not abuse its discretion in awarding prejudgment interest in receivership case because "Without the award, the [investors in a Ponzi scheme] effectively would have benefited from an interest-free loan of the amount in excess of their investments" and that under "fairness

and equity principles, prejudgment interest was proper.");[5] see also Wing v. Gillis, No. 2:09-CV-314, 2012 WL 12892197, at *1 (D. Utah June 26, 2012), aff'd, 525 F. App'x 795 (10th Cir. 2013) (granting Receiver's motion to modify judgment, which asked for judgment to be amended to include prejudgment interest). Elsewhere, courts have similarly held that Rule 59(e) can be used as a vehicle to request prejudgment interest. See, e.g., Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989) ("a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)."); Registry Sys. Int'l, Ltd. v. Hamm, No. 08-CV-00495, 2012 WL 4476630, at *3 (D. Colo. Sept. 28, 2012) ("[plaintiff's] postjudgment motion for prejudgment interest falls squarely within the purview of Rule 59(e)"); Zimmerman v. Univ. of Utah, No. 2:13-CV-01131, 2019 WL 1866323, at *4 (D. Utah Apr. 25, 2019) (considering request brought under Rule 59(e) to amend judgment to add prejudgment interest); Centennial Mgmt. Servs., Inc. v. Axa Re Vie, 196 F.R.D. 603, 606 (D. Kan. 2000) ("the [Tenth] Circuit has held that a motion for prejudgment interest is properly construed as a Rule 59(e) motion to amend the judgment."). Consequently, the Receiver has a legal basis for his request.

However, as discussed above, the Tenth Circuit has been clear that Rule 59(e) relief is available in limited circumstances, including (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. See O'Neal, 2019 WL 6828655, at *1. Neither (1) nor (2) applies here, and no one argues it was clear error for the court to have not already awarded prejudgment interest, but manifest injustice remains. "[M]anifest injustice does not result merely because a harm may go unremedied . . . "manifest injustice" must entail at least (1) a clear and certain prejudice to the

---

[5] Unpublished decisions are cited for persuasive value. Fed. R. App. 32.1; DUCivR 7-2(a)(2).

10

moving party that (2) is fundamentally unfair in light of governing law." U.S. Commodity Futures Trading Comm'n v. Gramalegui, No. 15-CV-02313, 2018 WL 11376451, at *1 (D. Colo. Dec. 21, 2018) (quoting Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 78 (D.D.C. 2013)) (cleaned up by Gramalegui court).

Here, the Receiver stands in the place of the victims of the RRC Ponzi scheme. Echoing the language of Wing, he argues that "The Court should amend the Judgment as a matter of fairness because, absent an award of prejudgment interest, the Howells will have benefitted from a multi-year, interest-free loan from the victims of the [RRC] Ponzi scheme." (See Receiver Rule 59 Mot., ECF No. 90 at 2–3). It would clearly and certainly prejudice the victims of the scheme, in a way that is fundamentally unfair, to not award prejudgment interest in this case; Utah's Uniform Voidable Transactions Act (the UVTA) is centered on preventing those who have unjustly benefited from Ponzi schemes from keeping their ill-gotten gains at the expense of victims of such schemes. An award of prejudgment interest in this case vindicates this interest and brings the Receiver's request within the purview of Rule 59(e).

    ii. Awarding Prejudgment Interest Against Les Howell and Gretchen Howell.

"An award of prejudgment interest is within the district court's discretion." Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d 1063, 1073 (10th Cir. 2008) (quoting Resolution Trust Corp. v. Fed. Sav. & Loan Ins. Corp., 25 F.3d 1493, 1506 (10th Cir. 1994)). "Prejudgment interest is an element of complete compensation." Id. (quoting West Virginia v. United States, 479 U.S. 305, 310 (1987)); see also Wing, 525 F. App'x at 801 (citing William A. Graham Co. v. Haughey, 646 F.3d 138, 145 (3d Cir. 2011) ("Requiring only that a losing defendant pay back the principle amount of a wrongfully obtained sum permits him to retain the money's time value as a windfall in the form of an interest-free loan.")).

> When making the decision whether to grant prejudgment interest, a district court must consider (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

S.E.C. v. Novus Techs., LLC, No. 2:07-CV-235, 2011 WL 2516938, at *2 (D. Utah June 23, 2011) (cleaned up).  The Tenth Circuit has observed that "Under fairness and equity principles, prejudgment interest was proper" when awarded to a Receiver, at an interest rate of five percent, against an investor in a Ponzi scheme.  Wing, 525 F. App'x at 801.

Applying these standards to the Receiver's motion and the relevant facts, it is a reasonable exercise of the court's discretion to find that the Receiver is entitled to an award of prejudgment interest.  This is true for both Les and Gretchen Howell.  Although Gretchen is situated differently than Les—in terms of their individual investments Les was a net winner in the RRC scheme, and Gretchen was not—"without such an award [she] will have benefited from an interest-free loan, allowing [her] to receive more from the scheme than [s]he had invested." Miller v. Kelley, No. 1:12-CV-00056, 2014 WL 5437023, at *7 (D. Utah Oct. 27, 2014).

> In effect, not awarding prejudgment interest rewards Defendant[s] for [the Ponzi scheme masterminds'] wrongdoing and rewards [them] for extending litigation on the matter.  Defendant[s], though innocent of any wrongful involvement in the underlying scheme, should not obtain an unearned windfall because [they] happened to be one of the few who managed to benefit from the Ponzi scheme, gaining the benefit of the time value of the money at the expense of other, less-fortunate investors.

Id.

The arguments made to the contrary by the Howells are unavailing.  First, although they argue to the contrary, as discussed above, Rule 59(e) may be invoked for the purpose the Receiver uses it for here.  Second, they argue that because the court held that Les was not entitled to prejudgment interest the Receiver is not entitled to it either.  (See Order Granting

Summ. J., ECF No. 88 at 22–23). But Les was in a different position than the Receiver. Les is a net winner from the RRC Ponzi scheme while the Receiver is restoring, to the extent possible, the RRC victims' money; the Receiver's position implicates the rationale behind the awarding of prejudgment interest while Les's did not. See, e.g., Wing, 525 F. App'x at 801 ("the award of prejudgment interest compensates for the loss of use of the money."). Third, the Howells argue that there is no legal basis for an award of five percent per annum interest. But the Tenth Circuit has upheld the use of a five percent prejudgment interest rate when a district awarded it in a Receivership case. Id. at 801–02. Fourth, as is discussed above in the context of Gretchen Howell's Rule 59(e) motion, the judgment against Gretchen is not limited to her interest in the Kingman property, it is a money judgment.

Consequently, the Receiver is entitled to prejudgment interest on the $3,218,103.96 total award. Applying to that figure an interest rate of five percent and a simple interest approach, from the last date either Howell received a payment from RRC, the court grants the Receiver an award of prejudgment interest totaling $683,847.09 (0.05 / 12 x 51 months x $3,218,103.96).

## VI. Order

For the reasons discussed above, the court **ORDERS** the following: Gretchen Howell's Rule 59 motion (ECF No. 95) is DENIED. The Receiver's Rule 59 motion (ECF No. 90) is GRANTED, and the Receiver is granted an award of $683,847.09 in prejudgment interest. The court will issue an amended judgment reflecting this Order.

DATED this 4th day of August, 2023.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
United States District Judge